UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
(at Lexington)

| | | |
|---|---|---|
| POWER INVESTMENTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 5: 18-466-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL BECKER AND SL EC, LLC, | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendants. | ) | |

*** *** *** ***

This matter is pending for consideration of the defendants' motion to dismiss the plaintiff's claims pursuant to Federal Rule of Civil Procedure 12(b)(2). [Record No. 7] The defendants have also filed a motion to transfer venue of the action to the United States District Court for the Eastern District of Missouri. Because the Court concludes that it does not have personal jurisdiction over the defendants, their motion to dismiss will be granted. The motion to transfer will be denied as moot.

I.

Defendants Michael Becker and SL EC, LLC, sought funding to buy the Ashley Power Plant in St. Louis, Missouri. [Record No. 8, p. 1] They tried to acquire approximately $8.5 million from the plaintiff to finance the transaction. [Record No. 8, p. 1] The defendants contacted Mason Miller, the sole member of Power Investments, LLC, starting in May 2016, in an effort to funding for the purchase. [Record No. 1-1, p. 4] The defendants made representations to the plaintiff about the cost of purchasing the Ashley Power Plant from May 2016 to August 2017. [Record No. 1-1, p. 2-5]

- 1 -

The plaintiff signed a Promissory Note and related Deed of Trust with Defendant Michael Becker on September 15, 2016. [Record No. 1-1, p. 7] Both documents included language stating they were subject to Missouri law. [Record No. 7-1, p. 2-3]

Ashley Energy, LLC (whose sole member was SL EC, LLC) entered into an Asset Purchase Agreement with Trigen-St. Louis Energy Corporation to purchase the Ashley Power Plant. [Record No. 7-1, p. 3] After Ashley Energy, LLC, purchased the plant, the plaintiff entered into a Membership Interest Purchase Agreement to acquire the member interest in Ashley Energy, LLC, from the defendants in August 2017. [Record No. 7.1, p. 3] The terms of the Membership Interest Purchase Agreement stated that the agreement was to be governed by the Missouri law. [Record No. 7-1, p. 3]

Plaintiff Power Investments, LLC filed a civil action against Defendants SL EC, LLC, and Michael Becker in the Fayette Circuit Court on October 25, 2017. [Record No. 1, p. 1] Becker was served on December 13, 2017, and SL EC, LLC, was served on July 5, 2018.[1] [Record No. 1, p. 2] The defendants filed a second suit in St. Louis, Missouri, two days after the suit was filed in Fayette County. [Record No. 7-1].

The plaintiff in the Fayette Circuit Court action moved for default and a default judgment was entered on December 5, 2017. [Record No. 7-1, p. 4-5] The SL EC, LLC defendants moved to set aside the default judgment on January 2, 2018. [Record No. 7-1, p. 5] That motion was granted on June 22, 2018, because the court found that the default

---

[1] The defendant's motion to dismiss states that SL EC, LLC, was served on June 5, 2018. [Record No. 7-1, p. 6] If that is correct, removal is not timely. However, the notice of removal indicates that SL EC, LLC, was served on July 5, 2018. The Civil Summons against SL EC, LLC, and Michael Becker appear to be dated July 2, 2018. [Record No. 7-8, p. 3] The certified mail receipt is dated July 6, 2018. *Id*. at 2.

judgment had been entered prematurely. [Record No. 7-1, p. 6] The defendants removed the case to this Court on July 24, 2018. [Record No. 1, p. 1-3] The defendants have now moved to dismiss the action for lack of personal jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure. [Record No. 7, p. 1]

## II.

"The plaintiff bears the burden of establishing that jurisdiction exists." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). "[T]he plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal" if the parties have not conducted jurisdictional discovery and the court has not held an evidentiary hearing *Id.* Where the court relies only on affidavits, "the pleadings and affidavits . . . are received in a light most favorable to the plaintiff," and the court "does not weigh the controverting assertions of the party seeking dismissal." *Id.* at 1459. However, "the plaintiff may not stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction." *Id.* at 1458; *see also Preferred Care of Del., Inc. v. Konicov*, 2016 U.S. Dist. LEXIS 59165 *1, *13 (E.D. Ky. 2016). The quantum of evidence necessary to avoid dismissal for lack of personal jurisdiction is comparable to that required to avoid summary judgment. *Theunissen*, 935 F.2d at 1458-59; *see also Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929-30 (6th Cir. 1974).

The plaintiff's *prima facie* case must establish that: "(1) jurisdiction is proper under a long-arm statute or other jurisdictional rule of . . . the forum state; and (2) the Due Process Clause also allows for jurisdiction under the facts of the case." *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). If either part of this test is not met, the analysis ends, and the Court may not exercise personal jurisdiction over the defendant. *Id.* at 711-12.

## III.

A federal court sitting in diversity "may exercise personal jurisdiction over an out-of-state defendant only if a court of the forum state could do so." *Newberry v. Silverman*, 789 F.3d, 636, 641 (6th Cir. 2015). The exercise of personal jurisdiction in Kentucky over a non-resident defendant must comport with the long-arm statute and the due process clause of the Fourteenth Amendment. *See Caesars Riverboat Casino, LLC v. Beach*, 336 S.W.3d 51, 57 (Ky. 2011). While the defendants' conduct may meet the Kentucky long-arm statute, exercising personal jurisdiction under the facts presented would offend due process.

    A.  <u>The Kentucky Long-Arm Statute</u>

Kentucky's long-arm statute enumerates nine specific instances in which a nonresident defendant may be subject to personal jurisdiction in Kentucky. KY. REV. STAT. § 454.210(a). This Court may only exercise personal jurisdiction over a nonresident defendant "if the cause of action arises from conduct or activity of the defendant that fits into one of the statute's enumerated categories." *Caesars*, 336 S.W.3d at 57. A claim "arises from" certain conduct when there is a "reasonable and direct nexus" between the conduct causing injury and the defendants' activities in the state. *Id.* at 59.

The plaintiff contends there is jurisdiction under the Kentucky long-arm statute based upon three of the specifically enumerated instances:

> (1) Transacting any business in this Commonwealth;
>     . . . .
>
> (4) Causing tortious injury in this Commonwealth by an act or omission outside this Commonwealth if he regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this Commonwealth, provided that the tortious injury occurring in this Commonwealth arises out of the doing or

- 4 -

>soliciting of business or a persistent course of conduct or derivation of substantial revenue within the Commonwealth;
>
>. . . .
>
>(9) Making a telephone solicitation, as defined in KRS § 367.46951, into the Commonwealth.

KY. REV. STAT. § 454.210(a)(1)-(9).

### (i)  Transacting Any Business

The plaintiff argues that the defendants transacted business in Kentucky by soliciting and receiving funds from Kentucky banks, and through telephone calls, emails, and text messages into the forum.  [Record No. 8, p. 5]  Under Ky. Rev. Stat. § 454.210(a)(1), transacting any business "establishes that even the slightest transaction is sufficient to bring a corporation within [the forum's] long-arm jurisdiction" *Beydoun v. Wataniya Rests. Holding, Q.S.C.,* 768 F.3d 499, 505-06 (6th Cir. 2014); *see also Eat More Wings, LLC, v. Home Mkt. Foods, Inc.,* 282 F. Supp. 3d 965 (E.D. Ky. 2017) (holding that sending emails to a Kentucky resident and asking him to send samples and instructions, which the plaintiff did, constituted "transacting any business").  *But see Perkins v. Bennett*, 2013 U.S. Dist. LEXIS 160833, *1, *3, *16-17 (W.D. Ky. 2013) (holding that the non-resident defendant's conduct of soliciting money over the phone did not amount to "transacting business" in Kentucky when he only contacted the Kentucky plaintiff to facilitate the loan to invest in a ski resort and provided account information).

Similar to *Perkins*, 2018 U.S. Dist. LEXIS 160833 at *16, where the defendants called to solicit funding for an investment, SL EC, LLC, and Michael Becker called, texted, and e-mailed the plaintiff to solicit funding to buy the subject power plant.  [Record No. 8-1, p. 1] Looking only to the plaintiff's affidavit, the only alleged transactions relate to the e-mails,

- 5 -

phone calls, and text messages that were for the purpose of acquiring money and providing wire information to the defendant. [Record No. 8-1, p. 2-3].

Conversely, in *Eat More Wings, LLC*, 282 F. Supp. 3d 965 at 970, the court found that sending e-mails to a Kentucky resident, knowing he was in Kentucky, asking him to fulfill samples and instructions (which he did from Kentucky) was enough to be "transacting business in Kentucky." Construing this evidence in the light most favorable to the plaintiffs, and without weighing the defendants' controverting assertions, *Theunissen*, 935 F.2d at 1459, the Court finds defendants have "transacted business" within the meaning of the long-arm statute because they called, texted, and sent e-mails to a Kentucky resident and asked him to wire money, which he did from Kentucky. [Record No. 8-1, p. 2]

**(ii)   Causing Tortious Injury**

The plaintiff also argues that the defendants caused tortious injury in Kentucky by defrauding him out of funds kept in two Kentucky banks. [Record No. 8, p. 5] The defendants must regularly do or solicit business, or engage in some other persistent course of conduct before the defendants' conduct will come within this section of the long-arm provision. KY. REV. STAT. § 454.210(2)(a)(4).

The plaintiff fails to include any specific facts in his affidavit regarding how the defendants regularly engage or solicit business in Kentucky. Instead, the affidavit focuses solely on the telephone and e-mail communications centered around the single transaction to buy the Ashley Power Plant. [Record No. 8-1] And the plaintiff fails to assert in his response how the defendants regularly conduct or solicit business in Kentucky. Instead, the plaintiff focuses solely on the financial harm he suffered through e-mails, texts, and phone calls related to the Ashley Power Plant sale. *See Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir.

2000) ("locus of monetary injury is immaterial, as long as the obligation did not arise from a privilege defendant exercised in the forum"). Thus, the defendants' conduct does not fall within Ky. Rev. Stat. § 454.210(2)(a)(4).

### (iii) Making a Telephone Solicitation

The plaintiff also contends this Court can exercise long-arm jurisdiction over the defendants because they made multiple telephone solicitations within the Commonwealth. [Record No. 8, p. 5] The plaintiff claims:

> First, Defendants called Mr. Miller directly on hundreds of occasions, either on his landline or his cellular telephone—each associated with his Lexington, Kentucky based law firm and each bearing the Central Kentucky area code "(859)". Second, Defendants would text Mr. Miller directly in Kentucky in such volume that, when printed out in a single spaced, small font, amounts to 264 pages of records, representing thousands of text messages. Third, Defendants sent hundreds of emails directly to Mr. Miller in Kentucky at his email address associated with his Kentucky law firm, representing over a gigabyte of data.

[Record No. 8 pp. 1-2, 6, 9]

Ky. Rev. Stat. § 367.46951 defines "telephone solicitation," in relevant part, as:

(a) A live or recorded communication sent by a telephone or message sent by a facsimile machine to a residential, mobile, or telephone paging device telephone number, including a call made by an automatic dialing or recorded message device, for the purpose of:

> 1. Soliciting a sale of consumer goods or services, offering an investment, business, or employment opportunity, or offering a consumer loan to the person called…

The plaintiff claims that the defendants contacted him to solicit funding for the power plant purchase and that this conduct fits within "communications by telephone or message for the purpose of offering an investment or business opportunity." KY. REV. STAT. § 367.4951(a). Similar to *Perkins,* 2013 U.S. Dist. LEXIS 160833 at *21-23, where the court found that the

plaintiff made a *prima facie* showing of personal jurisdiction under Ky. Rev. Stat. § 454.210(2)(a)(9) by illustrating that the defendant offered an investment/business opportunity of the loan over the phone, the defendants here contacted the plaintiff by phone to secure money and give wire instructions to purchase the Ashley Power Plant. [Record No. 8-1, p. 1]

The actions of the defendants in calling and soliciting funding from the plaintiff to buy the power plant fits within the meaning of Ky. Rev. Stat. § 454.210(2)(a)(9). However, the defendants' telephone calls, text messages, and e-mails do not create a connection to Kentucky that is substantial enough to support the exercise of personal jurisdiction over the defendants that comports with the due process.

B. <u>Due Process</u>

Due process requires that, to subject defendants to jurisdiction when they are not present within the forum, the defendants must have certain minimum contacts such that "traditional notions of fair play and substantial justice" are not offended. *Beydoun*, 768 F.3d at 505 ((quoting *Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Personal jurisdiction can be either specific or general. *Gerber v. Riordan*, 659 F.3d 514, 517 (6th Cir. 2011).

**(i)   Specific Jurisdiction**

Specific jurisdiction occurs when the cause of action arose in the forum state or relates to the defendants' conduct within the forum state. *Helicopteros Nacionalies de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-15 (1984). To satisfy due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial

>enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Means v. United States Conf. of Catholic Bishops*, 836 F.3d 643, 649 (6th Cir. 2016) (quoting *Southern Machine Co. v. Mohasco Industries Inc.,* 401 F.2d 374, 381 (6th Cir. 1968)).

"Purposeful availment" requires that there is a substantial connection between the defendants' contacts and the forum state "such that [they] should reasonably anticipate being haled into court there."  *Id*. (quoting *Burger King Corp v. Rudzewicz*, 471 U.S. 462, 475 (1985)).  The defendants must "purposefully avail [themselves] of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws. *Burger King Corp*., 471 U.S. at 475.  Jurisdiction should not be based solely as a result of "random, fortuitous, or attenuated contacts."  *Id*.  The quality of the contacts matters more than the quantity of the defendants' contacts. *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 722 (6th Cir. 2000).

The plaintiff references *Neal v. Jansen*, 270 F.3d 328 (6th Cir. 2001), in support of his argument that litigating the case in Kentucky would not offend due process.  In Neal, the court concluded that fraudulent communications from an out-of-state defendant had foreseeable effects in Tennessee and the misrepresentations were at the heart of the lawsuit.  The court explained that the defendant purposefully availed himself of the privilege of acting in Tennessee because making phone calls into the forum, standing alone, may be sufficient to confer jurisdiction where the phone calls and faxes form the basis of the action.  *Id*. at 332.

However, in *Rice v. Karsch*, 154 F. App'x 454, 463 (6th Cir. 2005), the Sixth Circuit found that phone calls, e-mails, and mail contacts arose solely because the plaintiff chose to have offices in Tennessee, not because he "sought to further his personal business or to create

'continuous and substantial' consequences there." The court also explained that the facts were not entirely clear regarding whether the defendant solicited, negotiated, or performed any aspect of the contract in Tennessee and that the plaintiff initiated the communications. *Id*. at 461.

The plaintiff also cites *Eat More Wings, LLC*, 282 F. Supp. 3d at 972. But SL EC, LLC, and Michael Becker's contacts differ from the contacts in *Eat More Wings, LLC,* because there, the contacts went beyond calls and e-mail requests from the defendants. The contacts also included the defendant using samples sent from the Kentucky resident and "deriving substantial revenue from Kentucky customers" in satisfying the jurisdictional criteria. *Id*.

Here, SL EC, LLC, and Michael Becker do not purposefully avail themselves of the benefits and protections of the forum because, according to the plaintiff's affidavit, the defendants only communicated with the plaintiff in Kentucky by phone, text messages, and e-mail. [Record No. 8-1] The plaintiff's affidavit merely states that the defendants contacted him, the sole member of Power Investments, LLC, to solicit funding to acquire the power plant. [Record No. 8-1, p. 1] The plaintiff states that certain false representations were made to induce him into providing money to the defendants. [Record No. 8-1, p. 1] However, the defendants only contacts with Kentucky that relate to this case are the calls, e-mails, and text messages sent to the plaintiff regarding funding to buy the Ashely Power Plant. *See Lak, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293 (6th Cir. 1989) (quoting *Scullin Steel Co. v. National Railway Utilization Corp.* 676 F.2d 309, 314 (8th Cir. 1982)) ("the use of interstate facilities such as a telephone and the mail is a "secondary or ancillary" factor and cannot alone provide the 'minimum contacts' required by due by due process").

The defendants contacts with Kentucky arose because the plaintiff is in Kentucky, not because the defendants directed their actions towards Kentucky. *See Rice v. Karsch*, 154 F. App'x at 463 (explaining the phone calls, e-mails, and text messages were made to Tennessee solely because the plaintiff chose to have offices there); *see also Calphalon*, 228 F.3d at 723; *Int'l Technologies Consultants v. Euroglas*, 107 F.3d 306, 395 (6th Cir. 1997). Further, the existence of a contract centered around the purchase of a Missouri property is insufficient to confer jurisdiction. *Cf. Calphalon*, 228 F.3d at 722 (explaining the existence of a contract for seventeen months is insufficient to confer jurisdiction). And while the plaintiff mentions money being withdrawn from Kentucky banks, however, the place of financial harm is immaterial. *Id.*; *see also Kerry Steel Inc. v. Paragon Industries, Inc.*, 106 F.3d 147, 151 (6th Cir. 1997). In short, the defendants' contacts with Kentucky do not give rise to a substantial connection with Kentucky such that the defendants could reasonably anticipate being haled into court here.

To "satisfy the 'arising from' prong of the *Southern Machine* test, the plaintiff must demonstrate a causal nexus between the defendants' contacts with the forum state and the plaintiff's alleged cause of action." *Beydoun*, 768 F.3d at 507. "Plaintiff's cause of action must be proximately caused by the defendant's contacts with the forum state." *Id*. at 507-08. The operative facts of the controversy must arise from the defendants' contacts with Kentucky. *Calphalon,* 228 F.3d at 723. Looking at the facts in the light most favorable to the plaintiff, the phone calls, text messages, and e-mails may form part of the basis for the action. However, the contacts still do not form a substantial connection to Kentucky such that the exercise of jurisdiction would be reasonable.

For the exercise of specific jurisdiction to be reasonable, the Court must balance the "[1] the burden on the defendant, [2] the interests of the forum State, and [3] the plaintiff's interest in obtaining relief." *Asahi Metal Indus. Co. v. Super. Court of Cal.,* 480 U.S. 102, 113 (1987). Additionally, the court should weigh "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies." *Id.* (quoting *World-Wide Volkswagen*, 444 U.S. 286, 292 (1980)). In balancing the factors set forth in *Asahi Metal,* the factors weigh against exercising jurisdiction over SL EC, LLC, and Michael Becker. The defendants are located in Missouri, the subject of the underlying contracts is in Missouri, and all the documents signed were subject to Missouri law. The forum state has an interest in protecting its residents from financial losses and plaintiff likely has an interest in obtaining relief in his home state, but the plaintiff is also a registered agent in Missouri and entered into contracts that were subject to Missouri law dealing with a Missouri property. [Record No. 14-1, p. 8] Further, there is another action in Missouri involving the same contracts and transaction. The share interest of the several states would likely want to consolidate these actions for the most efficient resolution. [Record No. 14-1, p. 4]

In summary, the defendants are not subject to specific jurisdiction in Kentucky and exercise personal jurisdiction over the defendants would violate the due process.

**(ii)     General Jurisdiction**

The plaintiff also alleges that the defendants are subject to general jurisdiction in Kentucky. To exercise general jurisdiction, the parties' affiliations with Kentucky must be "so 'continuous and systematic' as to render them essentially at home in the forum state." *BNSF Ry. V. Tyrrell*, 137 S. Ct. 1549, 1558 (2017) (quoting *Daimler AG v. Bauman*, 571 U.S. 117

(2014)). Additionally, an individual is subject to general jurisdiction in a forum where they are "physically present, domiciled, or have consented." *Chrisman Mill Farms, LLC v. Blazer*, 2017 U.S. Dist. LEXIS 59579 *1, *13 (E.D. Ky. 2017).

The plaintiff argues that the defendants' contacts with Kentucky rise to the level of "continuous or systematic." But the defendants' contacts do not rise to the level of "continuous and systematic" as to render them essentially at home in Kentucky. The defendants are not registered with the Kentucky Secretary of State, do not have any employees or agents in Kentucky, do not reside in Kentucky, do not own property in Kentucky, and do not direct their operations in Kentucky. Instead, the defendants only contacts with Kentucky are the communications with the plaintiff regarding the sale of a Missouri property, the Ashley Power Plant. These contacts are simply insufficient to confer general jurisdiction over them.

## IV.

For the foregoing reasons, it is hereby

**ORDERED** as follows:

1. Defendants SL EC, LLC's, and Michael Becker's motion to dismiss [Record No. 7] is **GRANTED.**

2. The defendants' motion to transfer [Record No. 14] is **DENIED** as moot.

Dated: September 14, 2018.



Signed By: *Danny C. Reeves*
United States District Judge